## WOODBERRY *v.* DUVALL and Another.

A father procured certain real estate to be conveyed to his son, who, in consideration of such conveyance, entered into an agreement in writing, not under seal, to maintain the father, during his life, and to pay certain sums to his brothers and sisters; and, to secure the performance of said agreement, executed a mortgage on the land. Afterward, the son conveyed the land to *D.*, and the father, as an inducement to such purchase, entered into an agreement, in writing, with the son to receive a given sum, to be

paid by a certain time, in discharge of the agreement for his maintainance; and *D.* agreed, in writing, with the son, to pay the amount named, and actually paid a portion of it, but failed to pay the whole amount by the day named. Suit by the father to recover the land, or to have the same charged with his maintainance.

*Held*, that the time agreed upon for the payment of the sum agreed to be taken in discharge of the contract for maintainance, was not made, or regarded by the parties, as of the essence of the contract.

*Held*, also, that though the agreement of *D.*, was not, in terms, a contract with the father, yet it was for his benefit, and could have been enforced by him, and constituted a good consideration for the release of the contract for maintainance.

*Held*, also, that, as the contract for maintainance was not under seal, nor a conveyance of lands or any interest therein, it could, therefore, be discharged or modified by an agreement not under seal.

*Held*, also, that a breach of all the terms of the contract of maintainance, could not have occurred until the death of the father, and as, after partial breach, a new contract was made and money received upon it, the father could not disregard or annul it, without having tendered the money received upon it.

APPEAL from the *Randolph* Circuit Court.

HANNA, J.—The appellant was the plaintiff below, and recovered a judgment for some $400, with an order that the same be made out of certain lands, if not paid, &c.

The complaint contained averments, that the land was purchased and held by appellant by title bond; that he contracted the same to his son, who, as the consideration therefor, was to support him, and to pay certain of his brothers and sisters named sums; that appellant caused his vendor, *Heltzel*, to convey directly to his son, *William B.*, who executed a mortgage on the same land to appellant, to secure the performance of said agreement; that his son failed to perform, and sold and conveyed said land to said *Duvall*, who had notice of said agreement, and who had not performed, &c.

There was a specific prayer, asking that the "estate be declared forfeited, and that the appellant be permitted to re-enter and possess the same," &c., or that "the same be charged with the fulfillment of said agreement."

A demurrer was sustained to that part asking a forfeiture. The defense set up, was, that the contract for maintainance, &c., was abandoned, and one substituted, by which

*Nov. Term, 1860.*

WOODBERRY
v.
DUVALL.

*Monday, December* 3.

Nov. Term, 1860.

WOODBERRY v. DUVALL.

the appellant was to receive $500, in lieu of said maintainance, &c.

It was found by the Court, that as an inducement to *Duvall* to purchase said land, appellant agreed with his son, and executed a writing to that effect, to take $500, by a certain day, in lieu of said maintainance ; and that *Duvall*, with the approbation of appellant, executed his writing to the son of appellant, promising to pay said $500, the same being in discharge of so much of the purchase money; that under the directions of appellant, *Duvall* had paid $160 of said sum. It is found that other sums of said purchase money were paid. It was not found that said $500 were paid at the time agreed upon, nor does the evidence show that fact.

It is insisted that the facts in this case show, that the conveyance, by the vendor of appellant to his son, did not vest an unconditional fee, but, in equity, created only an estate, with a condition subsequent, which condition was, the payment of the several sums agreed upon. It is further insisted, that the failure to pay, as agreed, worked a forfeiture of the estate, and gave the appellant the right to re-enter. That the subsequent agreement, even if made, not having been complied with by *Duvall*, was not a waiver of the right to enter, by appellant, because it was, so far as appellant was affected, without consideration.

The Court, by its finding, determined that the contracts and agreements amounted to no more than an undertaking to do certain things, and, as finally modified, to pay certain sums of money ; and that the land was held as a security therefor.

The first writing, in reference to the contract, is the deed from *Heltzel* to *William B. Woodberry*, which is unconditional. The next is the writing, or agreement, by which *William B.* undertook to maintain his father, and make certain payments ; and the mortgage, executed at the same time, to secure that object. The next is a written agreement by which *William B.* undertook, in consideration that *Duvall* would pay him (who thereby promised so to do) $900, appellant $500, and two of the children of appellant $100 each, to convey said land to said *Duvall*, "subject to the encumbrances then on it." Verbal testimony appears to have been received without

objection, showing that by this was meant an unexpired lease.

At the same time a writing was executed by appellant to *William B.*, promising to release the mortgage for maintainance, after the payment of $500, to be paid at a future and fixed day; the day being the same as that on which *Duvall* undertook to make said payment. The next is a deed from *William B.* to *Duvall*.

If the agreement, set up by defendant, was a binding, valid contract, it is not necessary for us to place any construction upon the contract as it at first existed, as the Court found that it had been abandoned, and that of a later date agreed upon, by which a certain sum was to be paid to the appellant, instead of the maintainance provided for by the first. This finding is supported by the evidence to such an extent, as to preclude us, under our repeated rulings, from interfering with it. As we are, under these rulings, thus prevented from inquiring behind the finding of the Court, upon these points, we do not see, upon looking into the testimony, sufficient cause to disturb the construction given by the Court to the contracts last made, if valid.

It is found, and we think upon sufficient evidence, that *Duvall* would not have entered into the contract of purchase, with the encumbrance resting upon the land, as created by the agreement and mortgage made by *William B.* to appellant. That appellant agreed to terms upon which that encumbrance might be discharged; that the terms were, in part, performed, but not at the time agreed upon.

It is insisted by appellant, that this latter agreement was not binding upon him at the commencement of this suit, for the following reasons:

"First. It contained a condition precedent to be performed by *William B.*, of which time was the essence, and it was not performed.

There was no writing executed by either *Duvall*, or *William B. Woodberry*, to appellant to carry out this latter agreement. That delivered by appellant to *William B.*, and read to, and in the hearing of, *Duvall*, at the time he purchased, is as follows:

" The nature and intention of this writing is such, that if

*William B. Woodberry* will pay, or cause to be paid to me, $500, on or before *October* 2, 1850, for that compensation, I promise and firmly agree to give him up his obligation binding himself to maintain me during my life, said obligation bearing date *April* 26, 1849; and, also, to release, relinquish and disannul all my claim and interest on a mortgage deed that said *William* gave me to secure the above mentioned obligation; as witness," &c.    " *William Woodberry.*"

Time does not appear to have been regarded by the parties as of the essence of this agreement. Nothing was paid upon it to appellant, at the date named, nor until long afterward, when $160 was paid by *Duvall*, and received by the directions of appellant. So that the first objection is not well taken. *Farley* v. *Farley*, 14 Ind. 333.

Second. It was not a contract, not being reciprocally binding upon the parties. As to this proposition, we are inclined to the opinion that, although no writing was executed to appellant, yet there was a promise by *William B.*, and a written agreement between him and *Duvall*, that said $500 should be paid to plaintiff in consideration of his said agreement, which agreement and promise were for appellant's benefit, and he might enforce the same.

Third. It was no bar to the action, being an executory accord. This point is not well taken, because the appellant appears, by the agreement, as read by the subsequent acts of the parties, to have relied upon the verbal promise of his son, and the clauses for his benefit in the written agreement of said son and *Duvall*. Com. Dig. B. 4; *Reeves* v. *Hearne*, 1 M. & W. 326; 1 Smith's Leading Cases, side p. 150, n.

Fourth. It had no consideration to support it.

The claim of appellant was for an uncertain sum, for the alleged breach of the contract for maintainance, and an unliquidated amount in the future; therefore, the agreement to pay a certain sum, was a sufficient consideration for the promise to receive it, &c. *Id.* 148, n.

Fifth. The agreement not being under seal, it could not change the original contract, which was under seal, was a conveyance of real estate, and secured an interest therein to appellant.

Because of the peculiar wording of our statute, the fifth point is earnestly urged. 2 R. S., § 273, p. 90.

It is insisted that the part of the section referred to, " excepting conveyances of real estate, or any interest therein," from the operation of the statute placing sealed and unsealed writings upon the same basis as evidence, applies to this case.

The original contract for maintainance, &c., was not under seal, nor was it a conveyance of lands, or any interest therein. The fact that the appellant held a security, under seal, to insure the performance of the stipulations of the contract, could not change the terms of the contract itself.

Sixth. The second agreement was made after breach of the original contract, and being of less dignity, could not discharge the original contract.

What we have already said, shows the error of this proposition, as to the dignity of the two contracts. The agreement to maintain, &c., was an unsealed writing, and the agreement of the appellant to surrender that writing, is also unsealed. It is true that the security (viz. the mortgage) for the due performance of the first agreement is under seal. A satisfaction of the stipulations of the first agreement, would discharge the security. That satisfaction might be evidenced by a writing not under seal. So, an agreement, contained in an instrument of like dignity, to surrender the evidences of the first contract, for a fixed sum, would, it appears to us, be valid. So far as that branch of the proposition is concerned, it is not well taken. As to the other portion, that the second agreement was made after breach of the first contract, it is, under the circumstances of this case, equally insufficient. Here was a contract, the full performance of which depended, in point of time, upon an uncertain event, namely, the life of the appellant. The breach might be partial, or continuous. But literally, an absolute breach of all the terms of the contract could not be said to have occurred, until after the time for the performance had elapsed. After this partial breach, another contract was entered into, which has, to a certain extent, been performed; money has been paid and received upon it; it has been acted upon as binding, by both parties. Whether the purchaser could, without having fully met the

Nov. Term, terms of that contract, sue upon it, we need not inquire; but
1860.   we are of opinion that the appellant is not in a condition,
LESLIE   without having offered to return the sums of money received
v.   under it, to now seek to disregard such contract.   Nor need we
SLUSHER.   inquire whether it is such a contract as he could enforce, as that
question does not arise, there being no cross errors assigned.

*Per Curiam.*—The judgment is affirmed, with costs.

*Jer. Smith*, for appellant.

*O. P. Morton* and *W. A. Peele*, for appellees.