## BATES v. LEFFORGE.

### No. 3653.

Court of Civil Appeals of Texas. Amarillo.

Oct. 7, 1931.

Rehearing Denied Nov. 4, 1931.

Monning & Akin, of Amarillo, for appellant.

Cooper & Lumpkin, of Amarillo, for appellee.

RANDOLPH, J.

M. W. Bates, as plaintiff, sued F. M. Lefforge as defendant to recover $1,705.60 debt and damages, with interest for breach of agreement to pay for the street pavements adjacent to certain premises leased by plaintiff to defendant.

The defendant filed his answer in the cause, consisting of a general demurrer, general denial, and specially pleading that, since the filing of the plaintiff's first amended original petition, plaintiff and defendant had entered into a contract by the terms of which defendant purchased said leased premises from plaintiff, who sold same to him individually and as survivor of the community estate of himself and deceased wife, Grevie B. Bates, and as guardian of the estate of his minor children Vera Bates, Billie Bates, and Wewee Bates, and, as part of the consideration for such purchase, defendant assumed and contracted to pay for the paving that had been laid adjacent to such leased premises during the life of the lease, relieving the plaintiff, who had never paid any part of same, from liability thereon, which assumption constituted a full and complete satisfaction and accord of plaintiff's claims.

The plaintiff filed his first supplemental petition, pleading a general demurrer, special exception to the plea in accord and satisfaction, as being merely a conclusion of the pleader, a general denial, and specially pleading that plaintiff had not paid for said paving improvements $562.80 in cash, and the

balance by the inclusion of the unpaid balance thereof as part of the $10,000 consideration for which plaintiff sold said premises to defendant; and further that it was expressly stipulated in the written contract of sale entered into between the plaintiff and defendant that such deal and the assumption of such paving obligation by defendant should in no way affect, prejudice, or bias this lawsuit, and further that defendant fraudulently induced this plaintiff to make such sale by representing to plaintiff that such sale would not affect this lawsuit, and defendant is estopped to claim that such assumption operated as an accord and satisfaction of plaintiff's cause of action.

A trial was had before a jury, and, on the conclusion of the evidence, the court instructed the jury that plaintiff had failed to establish a cause of action, and for them to return a verdict for the defendant. The jury thereupon returned such verdict for the defendant, and the trial court rendered judgment accordingly, and plaintiff has perfected his appeal to this court.

The plaintiff and defendant made and executed a lease contract whereby the plaintiff leased to defendant certain lots in the city of Amarillo for a term of five years for the sum of $400 per year, in equal annual installments. Clause five of said contract is the term thereof upon the construction of which the material question presented in appellant's first assignment of error arises. Such section is, in words, as follows: "The lessee shall pay all taxes on all improvements made on said land during the life of this lease including street and sidewalk improvements, if any shall be made."

The plaintiff's contentions are: (1) That the said paragraph 5 clearly provides that defendant shall pay for street and sidewalk improvements laid adjacent to the leased premises during the life of the lease; (2) in the event said paragraph 5 does not clearly so provide, then same is ambiguous, and, under the facts and circumstances and intention of the parties, same should be construed to mean that defendant should pay for the street improvements laid adjacent to the leased land during the life of the lease; (3) that in the event said lease contract, as written, does not so provide, then that the failure to so provide was the result of the mutual mistake of the plaintiff and defendant's agent who reached such agreement and intended same to be embraced in said written contract, and through the mistake and misapprehension of the draftsman and scrivener of said lease contract, who was representing both defendant and plaintiff equally, as to the legal effect and meaning of the words used, he failed to express such true agreement and to fulfill the intention of the parties to embody same in said contract, entitles plaintiff to have

said contract reformed so as to embrace said true agreement. (One of the streets abutting on the property described in said contract was paved during the second year of said lease contract at a cost of $1,705.60, with interest thereon from October 25, 1927, at the rate of eight per cent., and defendant has failed and refused and anticipatorily breached his contract to pay therefor, to plaintiff's damage in such amount.)

We will discuss this proposition to some extent, as being related to and in part conclusive of the question later decided involving the merger of this contract with the deed executed, and as explanatory of the holding under both questions.

The language of said paragraph 5 is, in our opinion, certainly ambiguous. To say that the defendant only bound himself to pay taxes upon sidewalks and improvements is that he bound himself to pay taxes upon sidewalks and street improvements which are never taxed in this state. This, on the face of the contract, was not the contract entered into. In view of the plaintiff's pleading, the trial court should have submitted the question to the jury unless, as is apparent from the record, the case was decided upon another view of it.

The evidence discloses that the defendant, being desirous of leasing the lots in controversy for a lumber yard, sent his agent, Mr. Holman, to see the plaintiff who resided on a farm in New Mexico, who negotiated a lease for him with the plaintiff. The extent of the agent's power to conclude such lease without making known the terms thereof to the defendant is not a material matter to be decided here. Mr. Holman and the plaintiff discussed the terms upon which the lease was to be made, and plaintiff testifies that he agreed to lease the lots to the defendant for the sum named, $400 per year, but that he required also that the defendant pay for all street paving and sidewalks constructed during the five-year term or life of the lease. Failing to draw up a contract which was satisfactory, Holman and the plaintiff went to the town of Tucumcari and employed a lawyer named Pritchett to draw it as the representative of both parties. It is testified both by the plaintiff and Pritchett that the plaintiff and Holman agreed that the lessee, the defendant, should pay for such sidewalks and street paving constructed adjacent to the lease, and Pritchett testifies that paragraph 5 of the contract was thereupon written to cover that part of the agreement. He further testifies that his experience in street paving improvements had been in Missouri, where costs of improvements of that kind were denominated as a tax against the property, and tax bills were issued in payment therefor, and that he took it for granted without investigation that the same system prevailed in

Texas and it was with that idea in mind that paragraph 5 was worded as it was. After the contract was drawn, it was signed by the plaintiff and carried by Holman to the defendant, who then signed it in duplicate, kept one copy, and turned the other over to the plaintiff. Defendant testified that he had no agreement as to the paving and sidewalks other than set out in the contract and deed, and that his undertaking to pay for same was included in the $10,000 consideration as set out in the deed. That he did not agree to pay for such sidewalks and street pavement in addition to the consideration named in the deed. Mr. Holman, defendant's agent, died before the trial.

"It is to be presumed that every provision of a contract was incorporated for a purpose. The Court has no right to nullify any of its terms, and, if possible, a construction will be adopted which gives effect to each and every part of the instrument, in preference to one which would render any of the provisions therein meaningless." 10 Tex. Jur. 284, 285.

"Where a written contract is ambiguous or its meaning is doubtful and parol evidence has been introduced to aid in determining the intent, the construction is a question for the jury, unless the parol evidence is undisputed, in which case the construction is a question of law for the Court." Id., 331.

It appearing that Pritchett represented both parties and had testified positively that both the plaintiff and the defendant's agent had agreed that the defendant should pay for the street improvements, if any were made during the life of the lease, his mistake in the effort to reduce the agreement which they had made to writing, he mistook its terms so that the writing does not represent the real contract, and equity will grant relief. Kelley v. Ward, 94 Tex. 289, 60 S. W. 311, 312.

In the case of Ferrell v. Delano et al. (Tex. Civ. App.) 144 S. W. 1039, 1041, the San Antonio court holds that, where a deed was executed under an agreement and through mistake of the conveyancer the deed did not express the agreement, the parties were entitled to a cancellation of the instrument.

"Where an action arises upon an instrument, which from mutual mistake, or mistake on one side and fraud or inequitable conduct on the other, fails to express the actual agreement, it is a matter particularly within the jurisdiction of a court of equity to reform such contract and grant relief in accordance with the intention of the parties because there is no adequate remedy at law, parol evidence being inadmissible to vary a written instrument." 34 Cyc. 906.

"It has been frequently asserted that a mistake of law is not a ground for reformation but of late years the disposition of the courts seems to be to qualify that proposition by many exceptions, so that there is much contrariety of opinion as to a general rule. The most broadly accepted doctrine, however, appears to be that a mere naked mistake of law, unattended by any special circumstance, furnishes no ground for relief by reformation, but if the mistake involves fact as well as law, or is attended by special circumstances, equity will relieve if the mistake is mutual. * * *" Id., 911, 912.

The mistake made by Pritchett representing both parties, in failing to reduce the agreement to writing as agreed on, was a mutual mistake of the parties, and entitled the plaintiff to a reformation of the contract.

In the transaction in controversy, there were three instruments executed. The first instrument was the lease, which has already been considered, and the rule applied there will also be applied to the discussion of the question of ambiguity in the deed. The second instrument was a sales contract in which the plaintiff contracted to sell the property in controversy to defendant. The third was the deed from plaintiff conveying the property in controversy to the defendant. The consideration set out in the lease contract was for the rent charge of $400 per year in equal monthly installments, for the term of five years, providing further for an extension of the lease at the end of the term for a consideration equal to eight per cent. of the market value of said property per annum. For this purpose, it was further provided that said property had a valuation of $5,000 placed upon it, and also the provision above quoted as paragraph 5.

The sales contract provided for a consideration of $10,000 as follows: "$1987.00 cash (of which the purchaser has deposited with the undersigned agent $500.00 as part payment, receipt of which is hereby acknowledged by said agent) and the assumption of $5,000.00, payable to Mary E. Lyons and due May 1, 1931, bearing interest at ten per cent per annum, and $1500.00 payable to Otto Eckert and Ben Monning, due May 1, 1931, and about $1370.00 paving lien payable in annual installments to the El Paso Bitulithic Co., and $142.91 taxes for the year 1930, payable at regular tax-paying time for same. Statement of all the above items to be furnished at date of closing and if more or less, to be added to or taken from above cash payment so as to make $10,000.00, the gross sale price."

The consideration named in the deed, the third instrument executed, is as follows:

" * * * For and in consideration of the sum of $168.06 to me cash in hand paid by F. M. Lefforge, one-half of which belongs to me individually and the other one-half to my said children and wards, the receipt of which

is hereby acknowledged and confessed, and the further consideration of the assumption and agreement to pay off and discharge by the grantee F. M. Lefforge, which he hereby does of the following described indebtedness against the land herein conveyed, to-wit:

"(a) The assumption of the unpaid principal on one certain promissory deed of trust note executed by this grantor on the 1st day of August, 1927, payable to the order of Mrs. Mary Lyons, due three years after date, bearing interest from date at the rate of ten per cent per annum, the unpaid balance of the principal so assumed by the grantee being the sum of $5,000.00, the said grantee assuming the unpaid balance of said note according to its tenor and effect, the said note being more fully described in the deed of trust from this grantor to Ray Wheatley, trustee, bearing even date with said deed, which deed of trust is of record in Vol. 61, page 217 of the Deed of Trust Records of Potter County, Texas, and is further described in the extension agreement entered into between Mary Lyons, the payee of said note, and M. W. Bates, dated August 1, 1930, and of record in the Deed Records of Potter County, Texas, to which reference is herein made;

"(b) And the further consideration of $1,-516.90, being evidenced by the assumption and agreement to pay off and discharge by the grantee the unpaid balance of the paving obligation against said property hereinafter described, together with all future interest accruing thereon, said obligation so assumed by the grantee being more fully described in the mechanic's lien contract entered into between M. W. Bates and the El Paso Bitulithic Company on the 15th day of Sept., A. D. 1927, and of record in Vol. 30, page 600 of the Mechanic's Lien Records of Potter County, Texas, to which reference is herein made;

"(c) And the further consideration of $1,-672.90, being evidenced by the assumption of the unpaid balance of the principal and interest owing on two certain promissory notes executed by this grantor on December 17, 1929, and payable to the order of Otto Eckert, the first of said notes being for the principal sum of $500.00, and the second note for the principal sum of $1,000.00, and due on or before July 16, 1931, and December 16, 1931, respectively, the unpaid balance owing on the principal of said two notes being $1500.00, and the accrued interest to this date amounting to $172.90, which said two notes are more fully described in the Deed of Trust from this grantor to Ben P. Monning, trustee, dated December 17, 1929, and of record in Vol. 74, page 653 of the Deed of Trust Records of Potter County, Texas, to which reference is herein made;

"(d) And the further consideration of the assumption by the grantee herein of one cer-

tain promissory note for the principal sum of $500.00, executed by the grantor, dated December 18, 1929, payable to the order of Ben P. Monning, due sixteen months after date and bearing interest from date at the rate of ten per cent per annum, there being unpaid on the principal of said note the sum of $500.00 and accrued interest of $57.63, which principal and accrued interest and all future interest accruing on said note the grantee herein assumes, and said note being more fully described in the deed of trust from this grantor to Henry D. Akin, trustee, bearing even date with said note and of record in Vol. 74 on page 655 of the Deed of Trust Records of Potter County, Texas, to which reference is herein made;

"(e) And the further consideration of $1,-052.88, being evidenced by the assumption and agreement to pay off the unpaid balance of the principal and interest owing on one certain promissory note for the principal sum of $1,000.00, executed by this grantor, on August 1, 1930, payable to the order of Otto Eckert and Ben P. Monning, due nine months after date, said note bearing interest from date at the rate of ten per cent per annum, the unpaid balance of the principal being $1,-000.00 and accrued interest being $52.88, which principal and accrued interest, together with future interest accruing thereon, the grantee herein assumes according to the tenor and effect of said note, which said note is more fully described in the Deed of Trust bearing even date with said note of record in Vol. 77, page 347 of the Deed of Trust Records of Potter County, Texas, to which reference is herein made; and

"(f) The further consideration of the assumption and agreement to pay the 1930 taxes amounting to $142.71 against the property hereinafter described, and the assumption of the 1931 taxes. * * *"

██ ██ It is elementary that the lease and the sales contract were merged in the deed executed by the plaintiff to the defendant. There is no ambiguity in the consideration named in the deed, and there is no attack made on the execution and delivery of said deed on the ground of fraud, accident or mistake. There being no ambiguity in the deed, and it being such an instrument as is required to be put in writing, and there being no pleading attacking the execution of same, and no evidence tending to prove fraud, accident, or mistake, and the lease and sales contracts being merged in the deed, the court did not err in instructing a verdict. Beard v. A. A. Gooch & Son, 62 Tex. Civ. App. 69, 130 S. W. 1022; Tom v. Roberson (Tex. Civ. App.) 182 S. W. 698, writ denied.

Where there is no ambiguity in an instrument, and that instrument being in evidence without controversy, there was nothing for the court to do but to instruct a verdict for

the defendant, notwithstanding equity would have required the court to submit the question for the reformation of the lease if it had not been merged in the deed.

We therefore affirm the trial court's judgment.

JACKSON, J., not sitting.